Filed 8/31/22; Certified for Publication 9/7/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re KENNETH D., a Person Coming Under the Juvenile Court Law. | C096051 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. 53005180) |
| Plaintiff and Respondent, | |
| v. | |
| J.T., | |
| Defendant and Appellant. | |

J.T. (father) appeals from the juvenile court's order terminating his parental rights over Kenneth D. (minor) and adopting the recommended findings and orders of the Placer County Department of Health and Human Services (Department). Father's contentions on appeal are limited to the Department's and juvenile court's compliance

1

with the requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Specifically, father complains the juvenile court and the Department failed to make the required initial inquiries of father's ICWA status prior to finding the ICWA inapplicable and terminating his parental rights. Father also complains the Department's investigation into mother's possible Native American heritage was inadequate. He argues these errors are prejudicial requiring reversal and that posttermination ICWA inquiries did not cure the alleged noncompliance.

We disagree. Father has not shown the juvenile court's ICWA determination premised upon information provided by mother is unsupported by substantial evidence, and in light of the augmented record filed May 5, 2022, father cannot show the juvenile court's and Department's failure to initially comply with their ICWA duties was prejudicial. Accordingly, we affirm.

BACKGROUND

Given father's limited issues on appeal, we focus on the information related to his ICWA claims. Following the minor's premature birth and positive test for amphetamine, the Department filed a Welfare and Institutions Code[1] section 300 petition on his behalf alleging he was a person described in subdivisions (b)(1) and (j)(1). The petition alleged the minor suffered, or was at substantial risk of suffering, harm due to substance abuse by C.B., the minor's mother, who had previously had another child taken away as a result of her substance abuse.

On April 20, 2021, mother reported to the Department that she may have Native American heritage on her father's side, but her relatives were not enrolled members, and she believed the tribe was out of Kentucky. Thereafter at the April 22, 2021 emergency detention hearing and in response to court inquiries, mother informed the court she did

---

[1] Subsequent undesignated statutory references are to the Welfare and Institutions Code.

not have any Native American heritage that made her eligible for registration as a tribal member. Accordingly, the court determined the ICWA did not apply.

Mother repeated her denial of Native American heritage to the Department on May 4, 2021. It was during this interview that she identified J.T. as a possible father, and J.T. subsequently consented to a paternity test. J.T.'s first appearance in the case was at the juvenile court's combined jurisdiction and disposition hearing on May 26, wherein the court found jurisdiction and ordered reunification for mother, but did not appoint counsel nor order services for J.T. pending return of the paternity test. If J.T. was determined to be the biological father, the matter would be put back on calendar. The court did not inquire regarding J.T.'s possible Native American status, but did determine that the ICWA did not apply.

J.T. was determined to be the biological father around July 6, 2021, but the matter was not placed back on calendar to address this development, and the record does not reflect any inquiries by the Department or the juvenile court regarding father's possible Native American heritage leading up to the termination of parental rights hearing.[2] Nonetheless, at the six-month review hearing on December 7, the juvenile court again found that the ICWA did not apply, and in February, the Department spoke with mother's mother K.B., who denied there was any Native American heritage anywhere in mother's family.

Thereafter, the juvenile court made no express ICWA findings at the section 366.26 hearing on March 22, 2022, wherein it terminated mother's and father's parental rights, nor did it ask father concerning any possible Native American heritage. Nonetheless, the juvenile court's previous ICWA determination was incorporated by virtue of the court's orders taking judicial notice of previous orders and recognizing that

---

[2] This included the juvenile court's failure to ask father concerning the ICWA at the November 17, 2021, and December 7, 2021 six-month review hearings.

unless modified all previous orders remained in effect. (See *In re Isaiah W.* (2016) 1 Cal.5th 1, 6, 9, 14-15 [ICWA issue cognizable on appeal from termination of parental rights even though no express ICWA finding was made at that hearing].) Father timely appealed.

We granted the Department's motion to augment the record in this appeal to include a Department memorandum filed with the juvenile court on April 28, 2022. This memorandum states father told the Department on April 21, 2022, that he "might have Cherokee ancestry out of Oklahoma." Father identified his mother as the family member who would have more information. The Department spoke with father's mother the same day and learned that the family does not have any Native *American* heritage. Father's mother explained she had received a DNA test result that identified her as having "Native Heritage," but her entire family is from "Culican, Sinaloa, Mexico," and therefore, she believed her "Native Heritage" originates from Mexico. Father's mother also provided the Department with names, dates of birth, and dates of death of multiple family members from Mexico.

Following up on this information, the Department contacted the Bureau of Indian Affairs (Bureau), Pacific Regional Office, and confirmed that native heritage originating in Mexico would not be federally recognized for purposes of the ICWA. Further, without the name of a tribe or registration in a tribe, the minor would not be considered an "Indian child" for purposes of the ICWA. Accordingly, the Department requested the juvenile "[c]ourt find [the] ICWA was properly noticed and that [the] ICWA does not apply" for the minor.

## DISCUSSION

Father argues the Department's and juvenile court's failure to comply with their respective initial and continuing ICWA duty to investigate whether the minor may be an Indian child requires reversal of the termination order. (See §§ 224.2, 366.26.)

4

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360.)

" '[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the [Department]'s initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a "reason to *believe*" the child is an Indian child, then the [Department] "shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone "knows or has reason to know that the child is an Indian child"]; *id.*, subd. (d) [defining circumstances that establish a "reason to know" a child is an Indian child]; § 224.3 [ICWA notice is required if there is a "reason to know" a child is an Indian child as defined under § 224.2, subd. (d)].)' (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)" (*In re G.A., supra*, 81 Cal.App.5th at p. 361.)

When there is reason to believe the child is an Indian child, further inquiry is necessary to help determine whether there is reason to know the child is an Indian child, including: "(A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3[;] [¶] (B) Contacting the [Bureau] and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility[;] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the [ICWA] [citation]. Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2).) There is no need, however, to continue on to section 224.2, subdivision (e)(2)(B) and (C) if the inquiry contemplated in subdivision (e)(2)(A) is completed and fails to yield information from which a specific tribal affiliation could be deduced.

"[C]laims of inadequate inquiry into a child's Native American ancestry [are reviewed] for substantial evidence." (*In re G.A., supra*, 81 Cal.App.5th at p. 361.) "We must uphold the [juvenile] court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.)

Starting with the claims regarding mother, father has not shown the juvenile court erred. While mother initially reported she may have Native American heritage through her father in Kentucky, she unequivocally stated those relatives were not enrolled in a

6

tribe and denied she was eligible for membership in a Native American tribe at the emergency detention hearing. Accordingly, the court determined the ICWA did not apply. Thereafter, mother consistently maintained she did not have Native American heritage in a follow-up interview with the Department and failed to suggest this was incorrect at any of the later hearings wherein the juvenile court found again that the ICWA did not apply. That mother did not have Native American heritage was further confirmed by her mother K.B., who denied there was any Native American heritage anywhere in mother's family. Accordingly, substantial evidence supports the juvenile court's finding that the ICWA does not apply to the minor as a result of mother's heritage. (*In re G.A., supra*, 81 Cal.App.5th at p. 361; *In re A.M., supra*, 47 Cal.App.5th at p. 314.)

As to the abject failure of the Department and juvenile court to inquire as to father's possible Native American heritage (see § 224.2, subds. (a), (c)), we agree this was error but conclude father has not shown this error was prejudicial. The augmented record shows that shortly after terminating father's parental rights, the Department conducted an appropriate ICWA inquiry, which included interviewing father and father's mother concerning their possible Native American heritage. The Department then followed up on this information with the Bureau, and the Bureau advised the Department that native heritage from Mexico would not trigger the ICWA.

There is nothing in the record to suggest further contacts with other members of father's family might contradict the unqualified statement by father's mother that the family did not have Native *American* heritage. Accordingly, the information in the record shows no reason to believe that father has Native American heritage. As such, any error the Department and juvenile court committed in not interviewing father and his mother *prior* to the termination hearing was harmless. (See *In re G.A., supra*, 81 Cal.App.5th at p. 363 [" '[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains

7

information suggesting a reason to believe that the child may be an "Indian child" within the meaning of [the] ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding' "]; *In re Dezi C*. (2022) 79 Cal.App.5th 769, 779.)

Moreover, even if we were to accept there was initially a reason to believe the child may have been an Indian child premised upon father's original statement, the Department complied with its duties of further inquiry by interviewing father's mother, who had been identified by father as the individual within the family with knowledge on this subject. Father's mother unequivocally identified all native heritage as being of Mexican origin, and the Department confirmed with the Bureau that because the native heritage was Mexican in origin, the minor was not an Indian child. (§ 224.2, subd. (e)(2).)

Finally, in finding father has failed to demonstrate prejudicial error, we recognize that father cites authority suggesting posttermination remedial efforts should not be considered when making this determination. (See *In re M.B*. (2022) 80 Cal.App.5th 617, 627-629; *In re E.V*. (2022) 80 Cal.App.5th 691, 700-701.) However, we disagree and find it is appropriate to consider the Department's posttermination evidence that has been made part of the official appellate record and the finding that the minor is not an Indian child within the meaning of the ICWA. (*In re Allison B*. (2022) 79 Cal.App.5th 214, 218-220.) We are not convinced by *In re M.B.* at pages 627-629 that the juvenile court's alleged inability to modify a termination order (§ 366.26, subd. (i)(1)) equates to an inability of this court to consider evidence within the appellate record of a subsequent ICWA investigation which does not alter the termination order. Nor do we agree with *In re E.V*. at pages 700-701 that *any* ICWA error is presumptively prejudicial requiring remand. Rather, we find it appropriate to remand only where the record shows " 'a reason to believe that the child may be an "Indian child" within the meaning of [the] ICWA.' " (See *In re G.A., supra*, 81 Cal.App.5th at p. 363.) Father cannot establish prejudicial error under this test.

DISPOSITION

The juvenile court's termination order is affirmed.

/s/ _____ ,
Robie, Acting P. J.

We concur:

/s/ _____ ,
Mauro, J.

/s/ _____ ,
Krause, J.

9

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| In re KENNETH D., a Person Coming Under the Juvenile Court Law. | C096051 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. 53005180) |
| Plaintiff and Respondent, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| v. | |
| J.T., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on August 31, 2022, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

_____
Robie, Acting P. J.


_____
Mauro, J.


_____
Krause, J.

1

EDITORIALS


APPEAL from a judgment of the Superior Court of Placer County, Colleen M. Nichols, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Karin E. Schwab, County Counsel, Lydia B. Stuart and Jason M. Folker, Deputy County Counsel, for Plaintiff and Respondent.